**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Scanned**

| | |
|---|---|
| STEREO OPTICAL CO., INC.,      ) | FILED: MAY 2, 2008 |
|            Plaintiff    ) | No. 08CV2512        TG |
|            ) | JUDGE KOCORAS |
| vs.    ) | MAGISTRATE JUDGE SCHENKIER |
|            ) | |
| THOMAS J. JUDY, individually, JACQUELINE  ) | |
| K. JUDY, individually, MR. RALPH E. CRAIG,  ) | |
| individually, MR. RICHARD J. UNGER,   ) | |
| individually, and VISION ASSESSMENT   ) | PLAINTIFF DEMANDS |
| CORPORATION, an Illinois corporation,   ) | TRIAL BY JURY |
|            ) | |
|            Defendants.    ) | |

## COMPLAINT

NOW COMES the Plaintiff, STEREO OPTICAL CO., INC., (hereinafter "STEREO" or "Plaintiff"), an Illinois Corporation, by and through its attorneys, TAMARI & BLUMENTHAL, LLC, complaining of the Defendants, THOMAS J. JUDY, (hereinafter "Mr. Judy") individually, MR. RALPH E. CRAIG (hereinafter "Mr. Craig") individually, MR. RICHARD J. UNGER, (hereinafter "Mr. Unger") individually, JACQUELINE K. JUDY, (hereinafter "Ms. Judy") individually and VISION ASSESSMENT CORPORATION, (hereinafter "VAC") an Illinois corporation, and in support thereof states as follows:

### JURISDICTION

1.     This action arises under Title 17 U.S. Code Sections §106, §501, §502, §502, §504 and §505. The Jurisdiction of the court is invoked under 28 U.S. Code Sections 1331 and 1343. The supplemental jurisdiction of this court is also invoked.

2.     Venue is proper in the Northern District of Illinois because all of the acts and omissions complained of occurred within said district, to wit, the State of Illinois, County of Cook, City of Chicago.

1

## PARTIES

3.   Plaintiff Stereo Optical Co., Inc. was and is a duly authorized Illinois corporation engaged in the optical testing equipment industry with its principal place of business at 3539 N Kenton Ave., Chicago, IL 60641.

4.   Stereo is a wholly owned subsidiary of Essilor International, S.A. (hereinafter "Essilor").

5.   Stereo has developed state of the art optical testing equipment since 1948 and has long established the industry standard for professional vision, glare and contrast sensitivity testing equipment.

6.   Defendant Thomas J. Judy is an individual residing in Illinois.   Mr. Judy was employed by Stereo between 11/27/1989 and 4/14/2007.   As of 4/27/01, he served as the company's Chief Operating Officer.

7.   Defendant Jacqueline K. Judy is an individual residing in Illinois.  Ms. Judy was employed by Stereo between 1/4/2005 and 4/28/2007 in the position of Sales.

8.   Defendant Ralph E. Craig is an individual residing in Illinois. Mr. Craig was employed by Stereo between 12/18/1995 and 4/14/2007 and was employed as the National Sales Manager.

9.   Defendant Richard J. Unger is an individual residing in Illinois.  Mr. Unger was employed by Stereo between 5/5/1980 and 5/2/2007.  He served as a photo supervisor from 1/10/1983 through 5/2/2007.

10.   Defendant Vision Assessment Corporation is an Illinois corporation engaged in the optical testing equipment industry with its principal place of business at 2675 Coyle Avenue, Elk Grove Village, Illinois 60007.

11.    Upon information and belief, Vision Assessment Corporation was incorporated on or about June 13, 2007, at the direction and/or instruction of either; Thomas Judy, Jacqueline Judy, Ralph Craig and/or Richard Unger.

## COMMON FACTS

### I.    Stereo's Proprietary Optical Tests

12.    Stereo Optical specializes in the manufacturing of tests used by doctors, optometrists, ophthalmologists and clinicians to identify and cure various eye maladies.

13.    Stereo is the developer and owner of numerous proprietary optical tests, including various random dot eye tests and more specifically the Random Dot ButterFly Test.

14.    Stereos products are employed to identify stereopsis and other depth-perception disorders primarily found in eyes of young children. The random dot tests provide the advantage of not providing the patient with any visual clues of what he or she is searching for, and have therefore been recognized as a major tool in the industry.

15.    Stereo is also the co-owner of a random dot butterfly test initially registered in 1980 under copyright volume 3560, Doc. 593.

### II.    The Confidentiality and Intellectual Property Agreements Executed by Thomas J. Judy, Ralph E. Craig, Richard J. Unger and Jacqueline K. Judy in Favor of Stereo

16.    In consideration of their continued employment with Stereo, after Stereo was acquired by Essilor International, S.A., in July, 2002, Mr. Judy, Mr. Craig and Mr. Unger executed Confidentiality and Intellectual Property Agreements ( hereinafter referred to as the "Agreement" or "Agreements" and attached hereto as Exhibit A), in

favor of "*Essilor International, S.A. and any subsidiary, affiliated or related entity to whom Employee performs services under this Agreement*". Ms. Judy executed the Agreement commencing with her employment in January 2005.

17.    The confidentiality provision of the Agreements provides in relevant part:

1. <u>Confidential Information</u>.

A. Employee understands that Company regards the following as confidential and proprietary or as trade secrets ("Confidential Information/Trade Secrets"):

(1) All information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Documentation that reflects confidential and proprietary information made known to Employee as a consequence of his/her employment with Company, including information conceived, originated, discovered, or developed by Company, third party beneficiaries (as defined in section 4.D.), or Employee, that is not generally known to the public, trade, or industry.

(3) Non-public business information, including information relating to specifications, programs, test results, technical know-how, new products, research and development, engineering, methods and procedures of operation, business or marketing plans, business techniques or strategies, software, licensed documentation, employees and employment policies and practices, customers, and product costing and pricing.

B. Employee will comply with all Company directives regarding protection of the Confidential Information/Trade Secrets.

C. Except as may be required by Employee's employment with Company, Employee, will not, without Company's prior written consent, disclose or use at any time, either during or after Employee's employment, any Confidential Information/Trade Secrets. Further, Employee will not render any services for or on behalf of any person or entity that has improperly acquired any Confidential Information/Trade Secrets.

D. Upon termination of Employee's employment, or at any other time Company requests, Employee will promptly deliver all Confidential

4

Information/Trade Secrets and all other Company property in his/her possession, custody or control to Company at Company's principal place of business or at such other location as Employee's manager may specify in writing.

18.    The Agreements contain the following provision regarding inventions and ideas:

2.    <u>Inventions, Ideas, Processes, and Designs</u>. Employee shall promptly disclose in writing to Company all inventions, ideas, processes and designs related to Company's business that Employee conceives or makes while employed with Company or during the six-month period immediately following termination of such employment. Such inventions, ideas, processes and designs shall be Company's sole and exclusive property.

19.    The non-solicitation provision of the Agreements provides in relevant part:

3. <u>Non-Solicitation of Employees</u>. During employment and for a period of one year immediately following termination, Employee agrees not to hire, employ, solicit, divert, recruit, or attempt to induce, on Employee's behalf or on behalf of any person or entity, directly or indirectly, any existing or future employee of Company to leave his or her position with Company.

## III. <u>Defendants Business Activities Since April 2007</u>

20.    Upon information and belief, in or about April 2007, Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy voluntarily terminated their employment at Stereo with the intention to form VAC.

21.    Upon information and belief, on or about their last day of employment with Stereo, Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy, without authority or permission of any kind, seized and assumed possession of certain proprietary computer and paper files belonging to Stereo containing, without limitation, customer lists, copies of company product information, price lists, distributor lists with contact information, historical documentation relating to purchase patterns with dates and details, and documentation containing cost of production and profit capabilities.

22.    Upon information and belief, Defendants formed VAC for the express purpose of conducting business in competition with Stereo.

23.    Upon information and belief, Defendants utilized Stereo's proprietary computer and paper files, product information and customer lists to establish VAC and reproduce optical testing products and equipment for the express purpose of competing against Stereo.

24.    Upon information and belief, Defendants reproduced copies and/or created derivative copies of vectograms and butterfly tests owned by Stereo, protected by copyright and covered by the various non-disclosure agreements executed by the Defendants in favor of Stereo.

25.    As early as May, 2007, representatives from VAC began appearing at trade shows to promote their products to compete with Stereo.  The first of these trade shows was the Association of Cataract and Refractive Surgeons in San Diego, California, where Defendants approached customers of Stereo Optical to promote stereo tests and vision testers.

26.    In June, 2007, Mr. Craig attended a meeting at the American Optometric Association and approached well established Stereo Optical distributors in an effort to promote competing products.

27.    In November, 2007, Mr. Craig, Mr. Judy and Ms. Judy appeared at the American Academy of Ophthalmology meeting and physically placed samples of VAC products in the exhibition booths of numerous distributor companies.  Many of the distributors receiving VAC samples are long time customers of Stereo Optical.

28.    Prior to the November, 2007, meeting, Ms. Judy had contacted several established international distributors of Stereo Optical specifically to inform them that VAC would be at the AAO meeting to discuss new products that would compete with Stereo, including but not limited to Designs for Vision-Australia, Cezal (Poland), Opthalmica (Italy), House of Vision (Brazil), Isolab (Chile), Oculus (Germany) and LEP (Spain).

29.    Upon information and belief, Defendants also utilized deceptive marketing strategies in an effort to circumvent restrictions imposed on them under their respective non-disclosure agreements, including but not limited to marketing their products through a company called Good-Lite and obtaining entrance passes to exhibitions from other companies to avoid the registration of VAC as an exhibitor and to avoid the expenses associated with registration.

30.    Defendants also approached at least three employees of Stereo Optical in an effort to solicit them from Stereo Optical. These employees were specifically told of opportunities with a "new company."  All three employees declined to participate in the formation of a competing company and all three remain employees of Stereo Optical to the present date.

31.    Defendants are also known to have solicited, by way of example and not in limitation thereof, Latham and Phillips, Opthalmic Instrument Company Massachusetts, Opthalmic Instrument Company California and Lombart Instruments, all long time distributors of Stereo Optical.

IV.  Stereo Optical's Damages

32.    As a result of the aforementioned acts and omissions of the Defendants, Stereo Optical was forced to recreate numerous records and processes directly related to the process of manufacturing the stereo tests.  The specific recreation of the referenced processes included film exposure time and film developing procedures and chemical mixtures.   The recreation process is one of trial and error which amounts to considerable time and wasted materials (film and chemicals).  It is estimated that the process took almost three months to get the photo department back to working at a level of optimum efficiency where scrap materials and wasted time were minimized.

33.    Upon information and belief, Mr. Tom Judy began plotting the start of VAC as early as January 2007, if not prior thereto.  Nevertheless, Mr. Judy remained on the payroll at SO until April, 2007, utilizing Stereo Optical time and resources to aid him in his efforts to formalize the creation of VAC. During the course of this time, Mr. Judy continued to receive and accept payment of salary and expenses from Stereo, all of which caused Stereo to sustain money damages, and which Stereo is entitled to recoup from Mr. Judy.

34.    Additionally, following the departure of Mr. Judy, it was discovered that the accounting for the company was so bad that the books were deemed un-auditable. Stereo was forced to initiate a clean up of the company books and records that generated costs estimated in excess of $69,000.00.

35.    Mr. Judy also caused the issuance of two consecutive checks in the amount of $8,854.65 and $8,854.65 to be issued without authorization, thereby causing Stereo money damages.

36.    Upon information and belief, on or about her last day of employment with Stereo Optical, Ms. Judy caused the records on her company laptop to be erased, including but not limited to all international customer lists and contact information, distributor agreements and pricing/profit data.

37.    It is also further evident that in the last few months of Ms. Judy's employment, that she sold Stereo Optical product at prices well below the standard prices published, thereby causing Stereo further damages.

38.    Ms. Judy's conduct caused (a) the profitability of those transactions to be well below expectations and (b) Stereo to expend considerable time and cost to return those customers to the published price list.

39.    Upon information and belief, Ms. Judy continues to be a vocal conspirator and to date continues to communicate with Stereo customers and defame the reputation of Stereo.

40.    As a further result of the Defendants' actions, without limiting the foregoing, it is estimated that Stereo has suffered first quarter earnings losses in 2008 in the approximate amount of $150,000.00.

### COUNT I
### Injunctive Relief
### Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation

41.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

42.    At all times herein relevant, the United States Federal Copyright Act, 17 U.S.C.A. §106, §501, §502, §502, §504 and §505 were in full force and effect.

43.    Section 106 provides in relevant parts:

The owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies;
(2) to prepare derivative works based upon the copyrighted work;

44.   Section 501 provides in relevant parts:

(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 … is an infringer of the copyright…

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it.

45.   Section 502(a) provides in relevant part:

Any court having jurisdiction of a civil action arising under this title may … grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

46.   Without limitation, (i) with reckless indifference to Stereo's rights, all of the Defendants produced and continue to reproduce Stereo's copyrighted works and/or produce derivate works based upon the copyrighted works.

47.   Specifically, Defendants have produced the following copies and/or derivative works:

a.   Stereo Fly with Lea Symbols, Good-Lite Part Number 1000VAC, which is a copy and derivative product of Stereo Optical's Stereo Fly SO-001 copyright and work;

b.   Stereo Butterfly with Lea Symbols, Good-Lite Part Number 1010VAC, which is a copy and derivative product of Stereo Optical's Stereo Butterfly SO-005 copyright and work;

c. Random Dot Stereo with Lea Symbols, Good-Lite Part Number 1005VAC, which is a copy and derivative product of Stereo Optical's Randot SO-002 copyright and work; and

d. Random Dot E Depth Perception Test, Good-Lite Part Number 1015VAC, which is a copy and derivative product of Stereo Optical's Random Dot "E" SO-003 copyright and work.

48. As a direct and proximate result of one or more of the foregoing, Stereo has sustained irreparable harm, and continues to be harmed by the Defendants' material and substantial infringement of Stereo's copyrights.

49. Stereo is without a legal remedy, since it will continue to suffer harm for as long as Defendants are able to produce, market and sell Stereo's copyrighted works, and/or prepare, produce, market and/or sell derivatives of Stereo's copyrighted works.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully prays for an order against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION, as follows:

(1) Ordering Defendants to cease all reproduction of Stereo's copyrighted works;

(2) Ordering Defendants to cease producing derivate works based upon Stereo's copyrighted works;

(3) Ordering Defendants to cease marketing of Stereo's copyrighted works;

(4) Ordering Defendants to cease sales of Stereo's copyrighted works;

(5) Ordering Defendants to cease preparing, producing, marketing and or selling any derivate products based on Stereo's copyrighted works;

11

(6) Ordering Defendants to cease producing each of the following copies and/or derivative works:

    a.  Stereo Fly with Lea Symbols, Good-Lite Part Number 1000VAC, which is a copy and derivative product of Stereo Optical's Stereo Fly SO-001 copyright and work;

    b.  Stereo Butterfly with Lea Symbols, Good-Lite Part Number 1010VAC, which is a copy and derivative product of Stereo Optical's Stereo Butterfly SO-005 copyright and work;

    c.  Random Dot Stereo with Lea Symbols, Good-Lite Part Number 1005VAC, which is a copy and derivative product of Stereo Optical's Randot SO-002 copyright and work; and

    d.  Random Dot E Depth Perception Test, Good-Lite Part Number 1015VAC, which is a copy and derivative product of Stereo Optical's Random Dot "E" SO-003 copyright and work.

(7) Ordering Defendants to destroy all copies and/or masters that have been made or used in violation of the copyright owner's exclusive rights;

(8) Ordering Defendants to pay compensatory damages, interest, costs and attorneys fees to the Plaintiff.

**COUNT II**
**Declaratory Judgment**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation**

50.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

51.    Stereo seeks declaratory relief pursuant to 735 ILCS Sec. 5/2-701(a), which provides in relevant part that the Court may "make binding declarations of rights, having the

force of final judgments" and make a "declaration of the rights of the parties interested."

52.    A present and actual controversy exists between Stereo and Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and Vision Assessment Corporation, regarding the reproduction of Stereo's works and the production of derivate works based upon Stereo's copyrighted works and Stereo seeks a binding declaration of its rights in connection therewith.

53.    In addition, a present and actual controversy exists between Stereo and Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and Vision Assessment Corporation, regarding the Defendants retention and use of proprietary computer and paper files belonging to Stereo containing, without limitation, product information and customer lists and Stereo seeks a binding declaration of its rights in connection therewith.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court make a binding declaration of Stereo's rights pursuant to 735 ILCS Sec 5/2-701 declaring that:

(1) Defendants Thomas Judy, Jacquline Judy, Ralph Craig, Richard Unger and Vision Assessment Corporation reproduction, marketing and sales of Stereo's copyrighted works, and derivative products based upon Stereo's copyrighted works are in derogation of Stereo's copyright.

54.    The continued retention and use of proprietary computer and paper files belonging to Stereo containing, without limitation, product information and customer lists and Stereo are in derogation of Stereo's contract rights;

**Count III
Copyright Infringement
Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision
Assessment Corporation**

55.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

56.    At all times herein relevant, the United States Federal Copyright Act, 17 U.S.C.A. § 101 et seq., was in full force and effect

57.    Defendants Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, violated the aforementioned statute by infringing on Stereo's copyrighted works within the meaning of 17 U.S.C.A. §501, by reproducing, marketing and selling Stereo's copyrighted works, and/or preparing, producing, marketing and/or selling derivatives of Stereo's copyrighted works.

58.    Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, knew or had reason to know that their actions of producing, marketing and selling Stereo's copyrighted works, and/or preparing, producing, marketing and/or selling derivatives of Stereo's copyrighted works were in violation of the Federal Copyright Act, and yet they continued to engage in the aforementioned course of activities and conduct.

59.    As a direct and proximate result of the aforesaid conduct, acts and omissions, Stereo sustained damages, including but not limited to loss of revenue, loss of customers, and loss of business opportunities.

60.    In addition to the damages set forth in Section 504 of the Federal Copyright Act, Plaintiff also seeks destruction or other reasonable disposition of all copies and/or masters found to have been made or used in violation of the copyright owner's exclusive rights pursuant to Section 503, as well as costs and attorney's fees pursuant to Section 505.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount equivalent to actual or statutory damages plus costs, attorneys fees, interest and punitive damages.

### Count IV
### Illinois Trade Secrets Act
### Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation

61.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

62.    At all times herein relevant, the Illinois Trade Secrets Act, 765 ILCS 1065 et seq., was in full force and effect.

63.    Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC violated the aforementioned statute by misappropriating trade secrets within the meaning of 765 ILCS 1065/2, including, but not limited to the misappropriation of Stereo's written processes, customer lists, product costs and pricing information.

64.    At all times herein relevant, Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, knew or had reason to know (i) that they had acquired said customer lists, confidential information and trade secrets from Stereo in violation of the Confidentiality and Intellectual Property Agreement, (ii)that the disclosure of the same to each other and to third persons was without express consent, (iii) that the confidential information was acquired by Mr. Judy, Mr. Craig, Mr. Unger and Ms.

Judy using improper means, under circumstances giving rise to a duty to maintain its secrecy, and derived from or through a person who had a duty to maintain its secrecy.

65.    Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, knew or should have known that the disclosure of confidential information to third persons without consent, as well as use of said confidential information without consent would cause loss of substantial revenue, loss of numerous customers, and tremendous financial and economic harm to Stereo.

66.    Notwithstanding, Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, planned, conspired and schemed to convert confidential information belonging to Stereo for financial gain, acting covertly and deceptively to conceal their actions, with willful and malicious intent to deprive Stereo of its property, trade secrets, customers and legal rights.

67.    As a direct and proximate result of the aforesaid conduct, acts and omissions, Stereo sustained substantial damages, including but not limited to loss of revenue, loss of customers and loss of business opportunities.

68.    In addition to the damages set forth in Section 1065/4(a) of the Trade Secrets Act, the Plaintiff also seeks exemplary damages, costs and attorney's fees pursuant to Section 1065/4(b) for the Defendants' willful and malicious deception and trickery.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest, attorneys fees and punitive damages.

**COUNT V**
**Breach of Contract – Confidentiality Provisions**
**Against Thomas Judy, Ralph Craig, Richard Unger and Jacqueline Judy**

69.     Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

70.     Pursuant to the provisions of the Confidentiality Agreement, it became and was the duty of Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy not to disclose documents and non-public information, including information relating to specifications, programs, test results, customers, pricing, costs, etc., as fully set out in the Agreements, to anyone outside of Stereo and, upon termination of employment with Stereo, to deliver to Stereo all documents, records or other information pertaining to the business of Stereo to which Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy had access, and certainly not to retain any records, reports, notes, compilations and or other recorded matter or any copies thereof pertaining to Stereo's operations, activities or business.

71.     Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy materially and blatantly breached the provisions of the Confidentiality Agreement by:

    a.   Disclosing confidential information and documents relating to the business of Stereo and its customers;

    b.   Failing and/or refusing to deliver to Stereo all documents, records or other information pertaining to the business of Stereo to which Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy had access;

    c.   Retaining records, reports, notes, compilations and other recorded matter, including data, research, marketing, advertising, customer data and customer lists

and copies thereof pertaining to the Stereo's operations, activities or business during the course of Defendants' term of employment;

d.  Defendants Tom Judy, Craig and Unger otherwise violated the Confidentiality Agreement of July 2002.

e.  Defendant Jacqueline Judy otherwise violated the Confidentiality Agreement of July 2005.

72.  The incorporation of the Vision Assessment Corporation was only made possible as a result of the Defendants' misappropriation of said confidential information.

73.  As a direct and proximate result of the aforesaid conduct, acts and omissions, Stereo sustained substantial damages, including but not limited to loss of revenue, loss of customers, and loss of business opportunities.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest and attorneys fees.

### COUNT VI
### Breach of Contract - Non-Solicitation Provisions
### Against Thomas Judy, Ralph Craig, Richard Unger and Jacqueline Judy

74.  Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

75.  Pursuant to the non-solicitation provisions of the Agreement, it became and was the duty of Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy not to directly or indirectly solicit, raid, induce or otherwise encourage any employee or consultant of the

Company or any Company affiliate to leave the employ of or terminate the consulting arrangement with the Company or such Company affiliate.

76.    Defendants breached the non-solicitation provisions of the Agreement in one or more of the following ways:

    a.    Solicited, raided, induced or otherwise encouraged employees of Stereo to leave the employ or terminate the consulting arrangement with Stereo;

    b.    Otherwise violated the Non-Solicitation provisions of the Agreement of July 2002.

    c.    Otherwise violated the Non-Solicitation provisions of the Agreement of July 2005.

77.    As a direct and proximate result of the aforesaid conduct, acts and omissions, Stereo sustained substantial damages, including but not limited to loss of revenue, loss of customers, and loss of business opportunities.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest and attorneys fees.

**Count VII**
**Conversion**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision**
**Assessment Corporation**

78.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

19

79.    Mr. Judy, Mr. Craig, Mr. Unger, Ms. Judy and VAC, intentionally interfered with Stereo's rights to the exclusive use and possession of its proprietary computer and paper files, product information and customer lists.

80.    Despite Stereo's demand for the return of its computer and paper files, product information and customer lists, the Defendants have failed and/or refused to return the same.

81.    As a direct and proximate result of the aforesaid conduct, acts and omissions, Stereo sustained substantial damages, including but not limited to loss of revenue, loss of customers, and loss of business opportunities.

82.    The Defendants acted with a willful and wanton disregard for the rights of the Plaintiff thereby entitling the Plaintiff to recover punitive damages.

83.    Plaintiff seeks now not only compensatory damages, but also punitive damages, attorney's fees, costs and pre-judgment interest.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest and attorneys fees and punitive damages.

**Count VIII**
**Intentional Interference with Contract**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation**

84.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

85.     Defendants produced, marketed and sold Stereo's copyrighted works, and/or prepared, produced, marketed and/or sold derivatives of Stereo's copyrighted works to various Stereo clients, including, but not limited to Brad Grills and Nik Apostolou at Designs for Vision, among others.

86.     Defendants intentionally and tortuously interfered with Plaintiff's business contracts and relationships with Designs for Vision amongst others, on one or more occasions, including on November 6, 2007 and on November 8, 2007, by soliciting, enticing and/or encouraging said customers to purchase VAC's infringing products.

87.     Upon information and belief, Defendants also intentionally and tortuously interfered with other unidentified customers.

88.     Defendants intentionally and tortuously planned and schemed to interfere with the aforementioned contracts for the purpose of causing said customers to order VAC's infringing products in willful and wanton disregard for the rights of the Plaintiff with knowledge of the restrictions imposed upon Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy under the Agreements, as well as the provisions of the Federal Copyright Act.

89.     Defendants' conduct was calculated, planned and intentional in that Defendants deliberately planned and conspired with one another to circumvent the restrictions imposed by their Confidentiality and Intellectual Property Agreements. Defendants all had full knowledge of Stereo's previous and existing contractual relationships with said customers.

90.     As a direct and proximate result of the Defendants' conduct, acts and/or omissions, one or more of the aforementioned customers purchased VAC's infringing products

and/or terminated their contracts with Stereo, resulting in lost revenues, lost customers and lost business opportunities.

91.   Defendants' conduct was so egregious that it entitles plaintiffs to not only compensatory damages, but also punitive damages, costs and prejudgment interest.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest, attorneys fees and punitive damages.

### Count IX
### Civil Conspiracy
### Against Thomas Judy, Ralph Craig, Richard Unger, and Jacqueline Judy

92.   Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

93.   Defendants, with intent, (i) conspired, plotted, and schemed, with each other, to deprive Stereo of its legal rights, property, confidential information, trade secrets and the like, (ii) conspired, plotted and schemed to obtain confidential information by improper means, (iii) conspired, plotted and schemed to use confidential information in derogation of Plaintiff's rights and in derogation of their contractual obligations.

94.   Defendants committed one or more acts in furtherance of their scheme to defraud Stereo of its property, copyright and contract rights by way of example, and not in limitation thereof, incorporating Vision Assessment Corporation, seizing customer lists, property, pricing and costs lists, producing, marketing and selling a copy of the Stereo butterfly test, and soliciting employees from Stereo.

95. At all times herein relevant, Defendants acted with intent and reckless disregard of the rights of Stereo.

96. Plaintiff seeks not only compensatory damages but also punitive damages, costs, attorney's fees, and prejudgment interest.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest, attorneys fees and punitive damages.

### Count X
### Breach of Fiduciary Duty
### Against Thomas Judy

97. Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

98. Mr. Judy held a position of special trust in a fiduciary capacity as the Chief Operating Officer of Stereo, and by virtue of said fiduciary capacity, owed a duty to Stereo not to engage in harmful or injurious conduct.

99. Moreover, Mr. Judy's employment contract contained express and implied obligations to hold trade secrets and other confidential information sacred and imposed duties upon said Defendant not to use said trade secrets and confidential information for his own benefit, the benefit of competitors or to the detriment of Stereo.

100. Furthermore, Mr. Judy's position as Chief Operating Officer at Stereo allowed Mr. Judy to issue checks under $10,000 without any additional approval.

101.   Mr. Judy breached his fiduciary duty to Stereo by plotting, planning, scheming and conspiring against Stereo, using subterfuge and deception to entice, induce, lure, and steal customers in direct violation of the Agreement, issuing checks in excess of permitted authority and without the requisite approval, in derogation of Stereo's rights, and enticing and luring other employees of Stereo to engage in the subterfuge and deception with him, all of which Mr. Judy knew or should have known would cause loss of revenue, loss of customers, financial and economic harm to Stereo, and did in fact cause loss of revenues, loss of customers, and financial and economic harm to Stereo.

102.   Defendant's conduct was calculated, deliberate, reprehensible, vindictive and shrouded in secrecy entitling Plaintiff to, not only compensatory damages, but also punitive damages, attorney's fees, costs and pre-judgment interest.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial, plus costs, interest, attorneys fees and punitive damages.

**Count XI**
**Unjust Enrichment**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision**
**Assessment Corporation**
**(Plead In the Alternative)**

103.    Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

104.    Defendants received the benefit of the Plaintiff's copyrighted works, computer and paper files, product information and customer lists, and have been enriched thereby.

105.    Defendants have retained the benefits associated with the copyrighted works, computer and paper files, product information and customer lists to the detriment and prejudice of the Plaintiff.

106.    Plaintiff has received no payment for its copyrighted works, computer and paper files, product information and customer lists.

107.    Defendants have retained the benefit of Plaintiffs copyrighted works, computer and paper files, product information and customer lists without restitution or legal justification and in violation of fundamental principles of justice, equity and good conscience.

108.    The reasonable value of the copyright and contract rights at issue will be determined at trial.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION in an amount to be determined at trial plus costs, interest and attorneys fees.

**Count XII**
**Constructive Trust**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation**

109.  Plaintiff realleges and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

110.  The agreements signed by Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy contain express and implied obligations to hold trade secrets and other confidential information sacred and impose duties upon said Defendants not to use said trade secrets and confidential information for their own benefit or the benefit of a competitor or to the detriment of Stereo.

111.  Notwithstanding, Defendants have violated the aforesaid duties by producing, marketing and selling reproductions and/or derivative works based on Stereo's copyrighted works, confidential and proprietary information.

112.  Defendants' breach of the aforesaid duties constitutes constructive or actual fraud which in turn justifies the imposition of a constructive trust over the proceeds, monies and other fruits of Defendants fraudulent activities.

113.  The monies received from customers as the result of the sale of the reproduction and/or derivatives of products owned by Stereo and/or the result of product information and customer lists seized from Stereo rightfully belong to Stereo.

114.  Defendants have acquired said proceeds, monies and fruits, as trustees, and have possessed said monies in their fiduciary capacity as trustee, for the benefit of the Plaintiff in this cause.

115.  Upon information and belief, Defendants have deposited the proceeds, monies and fruits of their fraudulent activities into one or more bank accounts belonging to VAC.

116.    Defendants as trustees are prohibited from commingling and utilizing said funds for their personal or business affairs and such conduct constitutes a breach of their duties as trustee.

117.    As trustees of the Plaintiff's money, Defendants are each personally responsible for wasting said assets and for using said assets without the permission of the Plaintiff.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court impose a constructive over the proceeds, monies and fruits of the sale of all products and derivative products produced, sold and marketed by the Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION for the use and benefit of the Plaintiff and that Defendants THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION be immediately enjoined from wasting, utilizing, transferring and/or disposing of proceeds, monies and fruits of their fraudulent activities, and further for costs, interest and attorneys fees.

**Count XIII**
**Accounting**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision Assessment Corporation**

118.    Plaintiff reallages and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

119.    The agreements signed by Mr. Judy, Mr. Craig, Mr. Unger and Ms. Judy contain express and implied obligations to hold trade secrets and other confidential information sacred and impose duties upon said Defendants not to use said trade

secrets and confidential information for their own benefit or the benefit of a competitor or to the detriment of Stereo.

120. Notwithstanding, Defendants have violated the aforesaid duties by producing, marketing and selling reproductions and/or derivative works based on Stereo's copyrighted works, confidential and proprietary information.

121. As a result of the aforementioned breach, Plaintiff seeks an accounting from Defendants to identify all reproductions and derivative works produced by the Defendants and subsequently sold, and to identify all monies, proceeds and fruits derived from the sale of any reproduction and/or derivative work.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION for an accounting to identify all reproductions and derivative works produced by the Defendants and subsequently sold and to identify all monies, proceeds and fruits derived from the sale of any reproduction and/or derivative work.

**Count XIV**
**Consumer Fraud and Deceptive Business Practices**
**Against Thomas Judy, Ralph Craig, Richard Unger, Jacqueline Judy and Vision**
**Assessment Corporation**

122. Plaintiff reallages and incorporates by reference paragraphs 1 to 40 of this complaint as though fully set forth herein.

123. At all times herein relevant, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 et seq., was in full force and effect.

124. Defendants violated the aforementioned statute, 815 ILCS 505/2, by intentionally utilizing unfair and deceptive methods of competition, acts and practices, using

deception and pretense, misrepresentation and concealment and suppression of material facts, as well as practices which violated Section 2 of the Uniform Deceptive Trade Practices Act, including but not limited to the soliciting of clients of Stereo, and the use of subterfuge and conspiracy to defraud Stereo of its property, trade secrets, and legal rights, by plotting, planning and scheming to deprive Stereo of its customers, in derogation of contractual obligations, and by producing, marketing and selling Stereo's copyrighted works, and/or preparing, producing, marketing and/or selling derivatives of Stereo's copyrighted works.

125. Defendants knew or should have known that such conduct would cause Stereo to lose revenues, profits, customers and sustain economic and financial injury, all in derogation of rights under the Confidentiality and Intellectual Property Agreements, and Stereo did, in fact, suffer loss of revenues, loss of profits, loss of customers and sustained financial and economic injury.

126. At all times herein mentioned, Defendants acted in an intentional, willful and malicious manner to fraudulently deprive Stereo of property, trade secrets and legal rights, and by concealing their conduct for financial gain to the detriment of Stereo, thereby entitling Plaintiff to recover from Defendants Plaintiff's actual damages pursuant to 815 ILCS 505/10A as well as other relief, including but not limited to punitive damages, attorney's fees, costs, and pre-judgment interest.

WHEREFORE, Plaintiff, STEREO OPTICAL CO., INC., respectfully requests that the Court enter judgment in its favor and against Defendants, THOMAS JUDY, RALPH CRAIG, RICHARD UNGER, JACQUELINE JUDY, individually, and VISION ASSESSMENT CORPORATION for an amount of money to be determined at trial plus costs, punitive damages, statutory damages, interest and attorneys fees.

Respectfully Submitted by,

Attorneys for STEREO OPTICAL CO., INC.

File: 91-505
Tamari & Blumenthal, LLC
Attorneys for Plaintiff
55 W. Monroe St., Suite 2370
Chicago, Illinois 60603
Tel: (312) 236-6200
ARDC: 6270706

# Exhibit A

**CONFIDENTIALITY AND INTELLECTUAL PROPERTY AGREEMENT**

This Agreement is made between R̲a̲l̲p̲h̲ ̲E̲ ̲C̲r̲a̲i̲g ("Employee") and Essilor International, S.A. and any subsidiary, affiliated or related entity for whom Employee performs services under this Agreement ("Company"), and is effective as of the later of the date Employee's employment with Company begins or the date Employee signs this Agreement.

For good and valuable consideration, including Company's at-will employment of Employee, Company and Employee agree as follows:

1. Confidential Information.

    A. Employee understands that Company regards the following as confidential and proprietary or as trade secrets ("Confidential Information/Trade Secrets"):

        (1) All information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

        (2) Documentation that reflects confidential and proprietary information made known to Employee as a consequence of his/her employment with Company, including information conceived, originated, discovered, or developed by Company, third party beneficiaries (as defined in section 4.D.), or Employee, that is not generally known to the public, trade, or industry.

        (3) Non-public business information, including information relating to specifications, programs, test results, technical know-how, new products, research and development, engineering, methods and procedures of operation, business or marketing plans, business techniques or strategies, software, licensed documentation, employees and employment policies and practices, customers, and product costing and pricing.

    B. Employee will comply with all Company directives regarding protection of the Confidential Information/Trade Secrets.

    C. Except as may be required by Employee's employment with Company, Employee will not, without Company's prior written consent, disclose or use at any time, either during or after Employee's employment, any Confidential Information/Trade Secrets. Further, Employee will not render any services for or on behalf of any person or entity that has improperly acquired any Confidential Information/Trade Secrets.

D. Upon termination of Employee's employment, or at any other time Company requests, Employee will promptly deliver all Confidential Information/Trade Secrets and all other Company property in his/her possession, custody or control to Company at Company's principal place of business or at such other location as Employee's manager may specify in writing.

2. <u>Inventions, Ideas, Processes, and Designs</u>. Employee shall promptly disclose in writing to Company all inventions, ideas, processes and designs related to Company's business that Employee conceives or makes while employed with Company or during the six-month period immediately following termination of such employment. Such inventions, ideas, processes and designs shall be Company's sole and exclusive property. Employee shall cooperate with Company in preparing patent, trademark and copyright applications for such developments and shall promptly assign all such inventions, ideas, processes and designs to Company. The decision to file for patent, trademark or copyright protection or to maintain such developments as trade secrets shall be in Company's sole discretion, and Employee shall be bound by such decision.

3. <u>Non-Solicitation of Employees</u>. During employment and for a period of one year immediately following termination, Employee agrees not to hire, employ, solicit, divert, recruit, or attempt to induce, on Employee's behalf or on behalf of any person or entity, directly or indirectly, any existing or future employee of Company to leave his or her position with Company.

4. <u>Miscellaneous</u>.

A. All restrictive covenants contained in this Agreement shall survive the termination of this Agreement.

B. Company's failure to exercise any of its rights under this Agreement or with respect to any other employee shall not be construed as a waiver of or prevent Company from enforcing strict compliance with any terms of this Agreement.

C. Company may assign this Agreement to any third party. Employee shall not assign this Agreement to any third party.

D. This Agreement shall run to the benefit of Company's successors, assigns, parents, subsidiaries, joint venturers and related entities (collectively, "third party beneficiaries"), including Essilor International, S.A. Since, by virtue of his/her employment with Company, Employee may become acquainted with Confidential Information/Trade Secrets and customers of one or more of the third party beneficiaries, Employee acknowledges that such third party beneficiaries shall have standing to sue on account of Employee's actual or threatened breach of this Agreement and waives any defense that they lack such standing.

E. Employee will work at or report to a facility ("Facility") at the following address: Stereo Optical company, 3539 North Kenton Avenue, Chicago, IL 60641. This Agreement shall be governed by the laws of the state in which the facility is located, exclusive of that state's choice of law principles.

F. This Agreement contains the entire agreement between the parties concerning its subject matter, and supersedes any prior agreements, understandings or representations between the parties relating to its subject matter. This Agreement may be terminated or amended only in writing signed by Employee and an authorized representative of Company.

G. The restrictive covenants contained in this Agreement are independent of any other contractual obligations, in this Agreement or otherwise, owed by Company to Employee. The existence of any claim or cause of action by Employee against Company, whether based on this Agreement or otherwise, shall not create a defense to Company's enforcement of any restrictive covenant contained in this Agreement.

H. If the scope or enforceability of any restrictive covenant in this Agreement is disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent it believes to be reasonable under the circumstances existing at that time.

I. If Employee is transferred from Essilor International to a subsidiary, affiliated or related entity, or from a subsidiary, affiliated or related entity to Essilor International or another subsidiary, affiliated or related entity, such transfer shall not terminate or modify this Agreement. This Agreement shall remain in effect for so long as Employee is employed by any of Company, or its subsidiary, affiliated or related entities unless either party earlier terminates it by providing written notice to the other party of such termination.

**IN WITNESS WHEREOF,** the parties have signed this Agreement and Employee acknowledges that Employee has read, understands and agrees to be bound by it.

COMPANY

Employee Signature

Manager Signature

Print Employee's Name
Ralph E. Craig

Print Manager's Name and Title
Thomas J. Duby    COO

Date
7-2-2002

Date
7/2/02

## CONFIDENTIALITY AND INTELLECTUAL PROPERTY AGREEMENT

This Agreement is made between *R. Unger* ("Employee") and Essilor International, S.A. and any subsidiary, affiliated or related entity for whom Employee performs services under this Agreement ("Company"), and is effective as of the later of the date Employee's employment with Company begins or the date Employee signs this Agreement.

For good and valuable consideration, including Company's at-will employment of Employee, Company and Employee agree as follows:

1. Confidential Information.

   A. Employee understands that Company regards the following as confidential and proprietary or as trade secrets ("Confidential Information/Trade Secrets"):

      (1) All information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

      (2) Documentation that reflects confidential and proprietary information made known to Employee as a consequence of his/her employment with Company, including information conceived, originated, discovered, or developed by Company, third party beneficiaries (as defined in section 4.D.), or Employee, that is not generally known to the public, trade, or industry.

      (3) Non-public business information, including information relating to specifications, programs, test results, technical know-how, new products, research and development, engineering, methods and procedures of operation, business or marketing plans, business techniques or strategies, software, licensed documentation, employees and employment policies and practices, customers, and product costing and pricing.

   B. Employee will comply with all Company directives regarding protection of the Confidential Information/Trade Secrets.

   C. Except as may be required by Employee's employment with Company, Employee will not, without Company's prior written consent, disclose or use at any time, either during or after Employee's employment, any Confidential Information/Trade Secrets. Further, Employee will not render any services for or on behalf of any person or entity that has improperly acquired any Confidential Information/Trade Secrets.

D. Upon termination of Employee's employment, or at any other time Company requests, Employee will promptly deliver all Confidential Information/Trade Secrets and all other Company property in his/her possession, custody or control to Company at Company's principal place of business or at such other location as Employee's manager may specify in writing.

2.  <u>Inventions, Ideas, Processes, and Designs</u>.  Employee shall promptly disclose in writing to Company all inventions, ideas, processes and designs related to Company's business that Employee conceives or makes while employed with Company or during the six-month period immediately following termination of such employment.  Such inventions, ideas, processes and designs shall be Company's sole and exclusive property.  Employee shall cooperate with Company in preparing patent, trademark and copyright applications for such developments and shall promptly assign all such inventions, ideas, processes and designs to Company.  The decision to file for patent, trademark or copyright protection or to maintain such developments as trade secrets shall be in Company's sole discretion, and Employee shall be bound by such decision.

3.  <u>Non-Solicitation of Employees</u>.  During employment and for a period of one year immediately following termination, Employee agrees not to hire, employ, solicit, divert, recruit, or attempt to induce, on Employee's behalf or on behalf of any person or entity, directly or indirectly, any existing or future employee of Company to leave his or her position with Company.

4.  <u>Miscellaneous</u>.

A. All restrictive covenants contained in this Agreement shall survive the termination of this Agreement.

B.  Company's failure to exercise any of its rights under this Agreement or with respect to any other employee shall not be construed as a waiver of or prevent Company from enforcing strict compliance with any terms of this Agreement.

C. Company may assign this Agreement to any third party.  Employee shall not assign this Agreement to any third party.

D. This Agreement shall run to the benefit of Company's successors, assigns, parents, subsidiaries, joint venturers and related entities (collectively, "third party beneficiaries"), including Essilor International, S.A.  Since, by virtue of his/her employment with Company, Employee may become acquainted with Confidential Information/Trade Secrets and customers of one or more of the third party beneficiaries, Employee acknowledges that such third party beneficiaries shall have standing to sue on account of Employee's actual or threatened breach of this Agreement and waives any defense that they lack such standing.

E. Employee will work at or report to a facility ("Facility") at the following address: Stereo Optical Company, 3539 North Kenton Avenue, Chicago, IL 60641. This Agreement shall be governed by the laws of the state in which the facility is located, exclusive of that state's choice of law principles.

F. This Agreement contains the entire agreement between the parties concerning its subject matter, and supersedes any prior agreements, understandings or representations between the parties relating to its subject matter. This Agreement may be terminated or amended only in writing signed by Employee and an authorized representative of Company.

G. The restrictive covenants contained in this Agreement are independent of any other contractual obligations, in this Agreement or otherwise, owed by Company to Employee. The existence of any claim or cause of action by Employee against Company, whether based on this Agreement or otherwise, shall not create a defense to Company's enforcement of any restrictive covenant contained in this Agreement.

H. If the scope or enforceability of any restrictive covenant in this Agreement is disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent it believes to be reasonable under the circumstances existing at that time.

I. If Employee is transferred from Essilor International to a subsidiary, affiliated or related entity, or from a subsidiary, affiliated or related entity to Essilor International or another subsidiary, affiliated or related entity, such transfer shall not terminate or modify this Agreement. This Agreement shall remain in effect for so long as Employee is employed by any of Company, or its subsidiary, affiliated or related entities unless either party earlier terminates it by providing written notice to the other party of such termination.

**IN WITNESS WHEREOF,** the parties have signed this Agreement and Employee acknowledges that Employee has read, understands and agrees to be bound by it.

| | COMPANY |
|---|---|
| _Employee Signature_ | _Manager Signature_ |
| Richard J. Unger | Thomas J. Daly |
| Print Employee's Name | Print Manager's Name and Title |
| 7·2·02 | 7/02/02 |
| Date | Date |





December 30, 2004

Jacqueline K Judy
135 Berkshire Dr.
Wheeling, IL 60090

Dear Jacqueline:

It is a pleasure to confirm our offer to you for the position of **Sales Representative,** with Stereo Optical Company, effective January 4, 2005, reporting to Ralph Craig. Your job duties will include: Direct sales, telemarketing, customer service and support and convention sales.

Listed below are the pertinent facts of our offer:

- Your starting salary will be **$1,153.85**, per biweekly pay period, less all applicable taxes and withholdings.
- **Commissions Structure, 1.5% on vision testers sold as a result of your efforts.**
- You will be eligible to participate in the Stereo Optical Company:
  - Comprehensive employee benefits package the first of the month after 60 calendar days of employment (i.e., health and life insurance, etc.)
  - 401k retirement plan the first pay period following 60 days of employment
- You will receive two weeks of vacation upon completion of your first year of service and you will receive an annual allowance on each anniversary date per the vacation policy.
Please Note:
Any Temporary or Regular Part-Time employee who joins the Company on Regular Full-Time basis will be given credit back to the original date they started working for the Company, provided there was no break in this service, although no retroactive benefits will be available. <u>Since you have worked as a Temporary Employee since August 2004 your waiting period will be waived.</u>

Essilor and Stereo Optical are recognized as leaders in our industry, with an outstanding reputation for quality and service to our customers. When you come on board, you will be joining a truly progressive and dynamic team, which is highly respected globally.

This offer is contingent on providing proper work authorization, and signing the required Confidentiality and Intellectual Property form. Please review the information contained herein and return a copy with your signed acceptance to my attention. Please note that this letter does not constitute an employment contract, but rather is a statement concerning the terms on which your employment-at-will with the company will commence.

Welcome to Stereo Optical Company Inc. If you have any questions or need further information, please feel free to contact me at 773-777-3869.

Sincerely,

Ralph Craig
National Sales Manager
Stereo Optical Co., Inc

*****************************************

I have reviewed the information contained in the offer letter and accept the position of Sales Representative, Stereo Optical Company and the details described herein.

_____    _____
Signature                          Date


Cc:    file
       HR EOA Dallas

### CONFIDENTIALITY AND INTELLECTUAL PROPERTY AGREEMENT

This Agreement is made between ~~hanst. ita~~ ("Employee") and Essilor International, S.A. and any subsidiary, affiliated or related entity for whom Employee performs services under this Agreement ("Company"), and is effective as of the later of the date Employee's employment with Company begins or the date Employee signs this Agreement.

For good and valuable consideration, including Company's at-will employment of Employee, Company and Employee agree as follows:

1.  Confidential Information.

    A.  Employee understands that Company regards the following as confidential and proprietary or as trade secrets ("Confidential Information/Trade Secrets"):

        (1)  All information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

        (2)  Documentation that reflects confidential and proprietary information made known to Employee as a consequence of his/her employment with Company, including information conceived, originated, discovered, or developed by Company, third party beneficiaries (as defined in section 4.D.), or Employee, that is not generally known to the public, trade, or industry.

        (3)  Non-public business information, including information relating to specifications, programs, test results, technical know-how, new products, research and development, engineering, methods and procedures of operation, business or marketing plans, business techniques or strategies, software, licensed documentation, employees and employment policies and practices, customers, and product costing and pricing.

    B.  Employee will comply with all Company directives regarding protection of the Confidential Information/Trade Secrets.

    C.  Except as may be required by Employee's employment with Company, Employee will not, without Company's prior written consent, disclose or use at any time, either during or after Employee's employment, any Confidential Information/Trade Secrets. Further, Employee will not render any services for or on behalf of any person or entity that has improperly acquired any Confidential Information/Trade Secrets.

D. Upon termination of Employee's employment, or at any other time Company requests, Employee will promptly deliver all Confidential Information/Trade Secrets and all other Company property in his/her possession, custody or control to Company at Company's principal place of business or at such other location as Employee's manager may specify in writing.

2. <u>Inventions, Ideas, Processes, and Designs</u>.  Employee shall promptly disclose in writing to Company all inventions, ideas, processes and designs related to Company's business that Employee conceives or makes while employed with Company or during the six-month period immediately following termination of such employment.  Such inventions, ideas, processes and designs shall be Company's sole and exclusive property.  Employee shall cooperate with Company in preparing patent, trademark and copyright applications for such developments and shall promptly assign all such inventions, ideas, processes and designs to Company.  The decision to file for patent, trademark or copyright protection or to maintain such developments as trade secrets shall be in Company's sole discretion, and Employee shall be bound by such decision.

3. <u>Non-Solicitation of Employees</u>.  During employment and for a period of one year immediately following termination, Employee agrees not to hire, employ, solicit, divert, recruit, or attempt to induce, on Employee's behalf or on behalf of any person or entity, directly or indirectly, any existing or future employee of Company to leave his or her position with Company.

4. <u>Miscellaneous</u>.

A. All restrictive covenants contained in this Agreement shall survive the termination of this Agreement.

B. Company's failure to exercise any of its rights under this Agreement or with respect to any other employee shall not be construed as a waiver of or prevent Company from enforcing strict compliance with any terms of this Agreement.

C. Company may assign this Agreement to any third party.  Employee shall not assign this Agreement to any third party.

D. This Agreement shall run to the benefit of Company's successors, assigns, parents, subsidiaries, joint venturers and related entities (collectively, "third party beneficiaries"), including Essilor International, S.A.  Since, by virtue of his/her employment with Company, Employee may become acquainted with Confidential Information/Trade Secrets and customers of one or more of the third party beneficiaries, Employee acknowledges that such third party beneficiaries shall have standing to sue on account of Employee's actual or threatened breach of this Agreement and waives any defense that they lack such standing.

E.  Employee will work at or report to a facility ("Facility") at the following address: Stereo Optical company, 3539 North Kenton Avenue, Chicago, IL 60641. This Agreement shall be governed by the laws of the state in which the facility is located, exclusive of that state's choice of law principles.

F.  This Agreement contains the entire agreement between the parties concerning its subject matter, and supersedes any prior agreements, understandings or representations between the parties relating to its subject matter. This Agreement may be terminated or amended only in writing signed by Employee and an authorized representative of Company.

G.  The restrictive covenants contained in this Agreement are independent of any other contractual obligations, in this Agreement or otherwise, owed by Company to Employee. The existence of any claim or cause of action by Employee against Company, whether based on this Agreement or otherwise, shall not create a defense to Company's enforcement of any restrictive covenant contained in this Agreement.

H.  If the scope or enforceability of any restrictive covenant in this Agreement is disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent it believes to be reasonable under the circumstances existing at that time.

I.  If Employee is transferred from Essilor International to a subsidiary, affiliated or related entity, or from a subsidiary, affiliated or related entity to Essilor International or another subsidiary, affiliated or related entity, such transfer shall not terminate or modify this Agreement. This Agreement shall remain in effect for so long as Employee is employed by any of Company, or its subsidiary, affiliated or related entities unless either party earlier terminates it by providing written notice to the other party of such termination.

**IN  WITNESS  WHEREOF,** the parties have signed this Agreement and Employee acknowledges that Employee has read, understands and agrees to be bound by it.

_____
Employee Signature

COMPANY

_____
Manager Signature

_____
Print Employee's Name
Thomas J. Truby

_____
Print Manager's Name and Title
Thomas J. Truby  COO

_____
Date
7-1-02

_____
Date
7-1-02