UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEREO OPTICAL CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  08 C 2512 |
| | ) |
| THOMAS J. JUDY, JACQUELINE K. JUDY, | ) |
| RALPH E. CRAIG, RICHARD J. UNGER, and | ) |
| VISION ASSESSMENT CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Thomas Judy ("Thomas"), Jacqueline Judy ("Jacqueline"), Ralph Craig ("Ralph"), Richard Unger ("Richard"), and Vision Assessment Corporation ("Vision") to dismiss Counts I-IV and VII-XIV of the complaint of Plaintiff Stereo Optical Co., Inc. ("Stereo") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

## **BACKGROUND**

According to the allegations of the complaint, which we must accept as true for purposes of this motion, Defendants Thomas, Jacqueline, Ralph, and Richard are former employees of Stereo. Stereo produces and sells optical testing equipment, including

tests used by doctors, optometrists, ophthalmologists, and clinicians in the diagnosis and treatment of eye maladies. One of these tests, the Random Dot ButterFly Test, is used to identify depth perception disorders found primarily in young children.

Thomas worked for Stereo for 18 years; for the last six of those years, he was Stereo's Chief Operating Officer. Jacqueline worked in Sales for approximately two years. Ralph served as National Sales Manager of Stereo for 12 years. Richard worked for Stereo for 27 years; approximately 24 of those were spent as a photo supervisor. In 2002, Thomas, Ralph, and Richard each executed confidentiality and intellectual property agreements[1] pertaining to their employment with Stereo. Jacqueline did likewise when she began working at Stereo in 2005.

On or about April 2007, Thomas, Jacqueline, Ralph, and Richard quit their jobs with Stereo. The complaint asserts that, upon their departure, they took computer and paper files containing customer lists, copies of company product information, price lists, distributor lists with contact information, historical documentation relating to purchase patterns, and documentation containing cost of production and profit capabilities. The complaint specifically alleges that Jacqueline erased all company records housed on her

---

[1] Essilor International, S.A., the parent company of Stereo and a nonparty in this suit, is the primary signatory to these agreements.

laptop computer, including international customer lists, distributor agreements, and data concerning pricing and profits.

In June 2007, approximately two months after leaving Stereo, the four former employees incorporated Vision. According to the complaint, Vision has reproduced copies of or created derivative works based upon vectograms and butterfly tests owned by Stereo and has marketed these to Stereo customers in various ways, including attendance at trade shows and medical conferences through November 2007.

Stereo also alleges that Defendants' actions precipitated a recreation of records and processes related to the manufacture of tests it produces. According to the complaint, the recreation is a trial-and-error process, which took several months to complete and which resulted in the waste of physical materials used in unsuccessful attempts at recreation. Finally, the complaint contends that Thomas caused two checks, each in the amount of $8,854.65, to be issued from Stereo's coffers without authorization.

In May 2008, Stereo filed the instant suit, claiming copyright infringement, violation of the Illinois Trade Secrets Act, breach of contract, conversion, tortious interference with contractual rights, civil conspiracy, breach of fiduciary duty by Thomas, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Defendants contend that all of Stereo's claims save those for breach of contract

fail to state a claim upon which relief can be granted and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

With these principles in mind, we turn to the instant motion.

## DISCUSSION

Counts I, XII, and XIII, though pled as independent causes of action, are actually requests for specific equitable remedies that could follow if liability is found on

substantive claims appearing elsewhere in the complaint. Count II seeks a declaration of Stereo's rights in the copyrighted materials as well as the files that were allegedly taken when the four employees left. The viability of Counts I, II, and XII at this stage overlaps that of the underlying substantive claims; if the latter fails, so will the former. Consequently, it is not necessary to address them separately from the substantive causes of action. Stereo does not oppose the dismissal of Count XIII, which requests an accounting of reproductions and derivative works Defendants have produced and proceeds gained therefrom. As Defendants point out, this "claim" is in essence a discovery request on the copyright infringement cause of action, and in light of Stereo's lack of opposition to its dismissal, Count XIII is dismissed.

**I. Copyright Claims**

Defendants challenge the viability of Stereo's copyright infringement claims on the basis that the complaint does not identify a registered copyright. A federal court can consider a claim of infringement of a copyright only after the copyright has been registered or preregistered. 17 U.S.C. § 411(a).[2]

---

[2] Although the Seventh Circuit has not squarely characterized the registration requirement of § 411(a) as jurisdictional, several other circuits have done so. *See In re Literary Works in Electronic Databases Copyright Litigation*, 509 F.3d 116, 121-22 (2d Cir. 2007) and cases cited therein. Our circuit court of appeals has recognized the need for registration before an infringement suit can be maintained. *See, e.g., Automation by Design, Inc. v. Raybestos Products Co.*, 463 F.3d 749, 752 n.1 (7th Cir. 2006).
(continued...)

Stereo contends that it owns a copyright of a work registered as copyright volume 3560, document 593. Beyond these identifiers, the complaint offers no description of the copyrighted material. At various points within the complaint, Stereo contends that Defendants reproduced optical testing products that are copies or derivative works of its copyrighted work, identified as Stereo Fly SO-001, Stereo Butterfly SO-005; Randot SO-002; and Random Dot "E" SO-003. Defendants argue that the four works identified are not registered with the Copyright Office and that any infringement action premised upon them cannot be maintained.

Stereo has asserted a registered copyright, which provides this court with subject matter jurisdiction over claims of unauthorized reproduction creation of works derivative of the materials protected by that copyright. Implicit in the complaint as well as Stereo's response to the instant motion is an assertion that the four works listed above are within the scope of the copyright; Defendants have made no showing to the contrary. At this stage of the proceedings, that is sufficient to supply subject matter jurisdiction and to defeat Defendants' Rule 12 challenge to the copyright claims.

---

[2](...continued)
Because of the jurisdictional nature of the registration requirement, a challenge to a complaint based upon its lack would be more appropriately brought pursuant to Fed. R. Civ. P. 12(b)(1) than under Rule 12(b)(6).

**II. Trade Secret Claims**

Count IV alleges misappropriation of written processes, customer lists, product costs and pricing information in violation of the Illinois Trade Secrets Act ("ITSA"). ITSA protects information that is sufficiently secret to yield economic value by virtue of its nondisclosure to persons who could gain value from that information and that is subjected to reasonable efforts to keep it secret or confidential.  765 ILCS 1065/2. Defendants contend that Count IV fails to state a claim because it does not identify the specific information that constituted the alleged trade secret.  In support of their argument that such specificity is required at the pleading stage of the case, Defendants point to only one case that has the potential to be controlling authority: *Composite Marine Propellors, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). However, that case was decided in the context of an appeal taken after a full jury trial, so the guidance that it provides on what is necessary to overcome a 12(b)(6) challenge launched at the outset of a suit is limited at best.

Customer lists and pricing data can constitute trade secrets under Illinois law depending upon the factual circumstances of each case.  *See Multiut Corp. v. Draiman*, 834 N.E.2d 43, 50 (Ill. App. Ct. 2005) (pricing data); *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209, 216 (Ill. App. Ct. 1995) (customer lists).  Based on the definition given above, it is not difficult to imagine a case involving manufacturing

processes whose economic value is sufficiently enhanced by their being kept secret from competitors or others who could gain from knowledge of the otherwise secret process.  Though Stereo will eventually have to identify the information underlying their ITSA claim and affirmatively demonstrate that it falls within the definition of a trade secret, they need not do so to survive a 12(b)(6) motion.

### III.  Other State Law Claims

For the remainder of the counts under attack, Defendants contend that dismissal is appropriate on the grounds that the claims are preempted by either ITSA or the Copyright Act.

In pertinent part, ITSA provides that it displaces "conflicting tort, restitutionary, unfair competition" and other Illinois laws that provide "civil remedies for misappropriation of a trade secret."  765 ILCS 1065/8.  The preemptive effect does not reach to contractual remedies or "other civil remedies that are not based upon misappropriation of a trade secret."  *Id.*  Preemption under the Copyright Act is governed by 17 U.S.C. § 301(a), which provides in pertinent part that any and all legal or equitable rights arising under state common law or statute that are equivalent to the exclusive rights set out in the Copyright Act are replaced by the protections and remedies set out the federal statute.

Both acts replace only claims that are premised upon a violation of the same rights that are protected within the statutes. Though there are portions of each of the challenged claims that are based on copyright and trade secret theories, only the unjust enrichment claim contains no other component. Though pled as an alternative theory, Stereo's unjust enrichment claim reduces to either one for restitution for the alleged misappropriation of the purportedly secret information or one for damages for unauthorized copying or creation of derivative works. Both claims would be preempted by the respective statutes. *See Pope v. Alberto-Culver Company*, 694 N.E.2d 615, 619 (Ill. App. Ct. 1998) (trade secret); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986) (copyright); *Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 555-56 (S.D.N.Y. 2007) (copyright).

By contrast, the conversion claim includes assertions that the processes used to create the tests were taken such that they had to be recreated and that Jacqueline erased files from her computer. These actions would deprive Stereo of the property at issue permanently or for an indefinite period of time, as required to allege conversion under Illinois law. *See, e.g.*, In *re Rosin*, 620 N.E.2d 368, 370 (Ill. 1993). The rights asserted in those two instances are not premised upon trade secret or copyright law, so the conversion claim contains aspects that would not fall within the preemptive scope of the

Copyright Act or ITSA. Similarly, the claim of tortious interference with contractual relations contains assertions that Jacqueline defamed Stereo to its customers, ostensibly to convince them to stop doing business with Stereo. This claim is separate from assertions that customers were drawn away from Stereo through the unlawful use of copyrighted materials or trade secrets. The breach of fiduciary duty claim asserts that Thomas was writing unauthorized checks, a claim that does not overlap a copyright or trade secret claim.

As each of these substantive causes of action survive, so too does the civil conspiracy claim, which asserts that one or more of the Defendants conspired to deprive Stereo of its legal rights, which can be construed as the portions of the complaint that are not preempted by the applicable statutes. In other words, the complaint claims that some combination of Defendants engaged in concerted action to accomplish the torts alleged that fall outside of the copyright infringement and misappropriation of trade secrets causes of action. That is sufficient to state a claim for civil conspiracy under Illinois law. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894-95 (Ill. 1994).

The final count addressed by Defendants' motion is premised upon the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA"). 815 ILCS 505/1 *et seq*. Defendants challenge this count on preemption grounds, but it suffers from an even more fundamental flaw that obviates a preemption analysis. The ICFDPA is a consumer

protection law designed to outlaw practices that affect consumers. *Bankier v. First Federal Savings & Loan Ass'n of Champaign*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992). Though businesses are not precluded from bringing suit under this statute, they must show some connection between the allegedly unlawful acts and consumer protection concerns. *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 698 N.E.2d 257, 269 (Ill. App. Ct. 1998). Count XIV asserts harm only to Stereo and thus seeks a remedy to address a wrong of a private party, not consumers at large. Consequently, these assertions do not state a claim for relief under the ICFDPA. *See Bankier*, 588 N.E.2d at 398. Dismissal of this count is therefore appropriate under Rule 12(b)(6).

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is denied with respect to Counts I, II, III, IV, VII, VIII, IX, X, and XII. The motion is granted with respect to Counts XI, XIII, and XIV.

*[signature: Charles P. Kocoras]*

Charles P. Kocoras
United States District Judge

Dated:    September 8, 2008